JOURNAL ENTRY AND OPINION
{¶ 1} Defendant-appellant Robert Melton appeals from his conviction after a jury found him guilty of assault on a peace officer.
 {¶ 2} Melton presents four assignments of error. He claims that improper evidence was introduced at trial, and that his trial attorney provided ineffective assistance by failing to raise objections to this evidence, failing to adequately defend him during the prosecution's presentation of its case, and failing to request a jury instruction on self-defense.
 {¶ 3} After a thorough review of the record, however, this court cannot agree with Melton's claims. His conviction, therefore, is affirmed. *Page 2 
 {¶ 4} The prosecution presented two witnesses against Melton during its case-in-chief. They provided the following version of events.
 {¶ 5} Ryan Fankhauser testified he was employed as a police officer by the Greater Cleveland Regional Transit Authority ("RTA"); he worked "second shift"[1] on the evening of August 20, 2006. He and his partner, Charles Wilson, were on routine foot patrol in the area of West Roadway and Superior Avenue. They noticed a bus at the bus stop, with people boarding.
 {¶ 6} A man whom Fankhauser knew as Melton stood near the intersection with "four RTA fare passes in his hand." Fankhauser stated he became acquainted with Melton from previous interactions with him. Fankhauser further stated he witnessed Melton exchange two of the passes for money from other persons nearby.
 {¶ 7} According to Fankhauser's testimony, which Wilson corroborated, Melton's actions constituted a violation of the Ohio Revised Code. Therefore, the officers proceeded to inform Melton that he was under arrest for "unauthorized use of property."[2]
 {¶ 8} Fankhauser and Wilson transported Melton to the Cleveland Second District Police Station for booking on the charge, then returned to the RTA police headquarters. Approximately two hours later, they received a call from the Second *Page 3 
District station to return, in order to transport Melton to the hospital for treatment of some "pre-existing" injuries. The RTA officers decided to take Melton to the nearest hospital; viz., the MetroHealth facility on West 25th Street. Melton remained in handcuffs.
 {¶ 9} Fankhauser testified that the emergency room was crowded that night, so Melton did not receive immediate treatment. Fankhauser further stated that Melton became disruptive during this time, describing his behavior as "loud," and "uncooperative and turbulent." According to Fankhauser, he and Wilson ultimately were required to remove Melton to the "side waiting area, keep him away from other patients," but Melton refused to sit where he had been directed.
 {¶ 10} Fankhauser stated that he put his arm under Melton's and "escorted" Melton to another chair. Upon "plac[ing] him in the seat," Melton quickly "lifted himself off the seat" and "forcefully kicked" Fankhauser in the left leg, in the area of his knee. Although Fankhauser registered an expression of pain, he and Wilson managed together to restrain Melton, whereupon they informed him he now was charged with assault on a police officer. As a result of Melton's kick, Fankhauser received a large bruise on his knee.
 {¶ 11} The Cuyahoga County grand jury subsequently indicted Melton on one count of violating R.C. 2903.13, knowingly causing or attempting to cause physical *Page 4 
harm to a peace officer who was in the performance of his official duties. The case proceeded to a jury trial.
 {¶ 12} After the prosecution presented its case, Melton testified on his own behalf. He essentially claimed that RTA officers considered him to be a troublemaker and that they routinely harassed him. Melton readily acknowledged that RTA officers had arrested him on earlier occasions; he did not demonstrate any reluctance to admit to those arrests, because some of those charges later had been dismissed.
 {¶ 13} Melton indicated that on the occasion of the incident, Fankhauser and Wilson manufactured an excuse to arrest him, and then ignored his medical condition until they were called back to take him to the hospital. Melton asserted that while the three of them were waiting in the emergency room, the officers had been subjecting him to threats and manhandling him. Melton described the incident thusly: "There was no kick. This was sort of like * * * I `m going back, and I got to regain my balance. [My foot] hit his leg, but it wasn't a kick, okay?"
 {¶ 14} After hearing the evidence, the jury eventually returned a guilty verdict. The trial court sentenced Melton to a nine-month term of incarceration.
 {¶ 15} Melton appeals from his conviction with the following assignments of error, which are set forth verbatim. *Page 5 
 "I. It was plain error to admit not relevant evidence to the issue of assault on a police officer.
 "II. Counsel was ineffective by remaining silent while the prosecutor disparaged Robert Melton, to his detriment.
 "III. Defense counsel was ineffective in remaining silent to the prosecutor's introduction of evidence relative to other acts, in violation of Evidence Rule 404.
 "IV. Counsel was ineffective by neglecting to request the court for an instruction on self-defense."
 {¶ 16} Melton first asserts that the prosecutor made improper remarks and elicited improper testimony during trial that prejudiced the jury and compromised his right to a fair trial. He contends plain error thus occurred which mandates reversal of his conviction. Crim.R. 52(B).
 {¶ 17} The "plain error" rule "is to be applied with the utmost caution and invoked only under exceptional circumstances, in order to prevent a manifest miscarriage of justice." State v. Cooperrider (1983),5 Ohio St.3d 226 at 227. It must be obvious from the record that error clearly affected the outcome of the trial. State v. Underwood (1983),3 Ohio St.3d 12.
 {¶ 18} The foregoing standard is not met in this case, because no error occurred. A prosecutor must be permitted to develop the circumstances that *Page 6 
surround the incident in order to establish the elements of the offense. Evid.R. 401, 402. Moreover, he is entitled to a certain degree of latitude in his remarks. State v. Apanovich (1987), 33 Ohio St.3d 19. His remarks, therefore, should not be taken out of context and given their most damaging meaning. State v. Carter, 89 Ohio St.3d 593,2000-Ohio-172.
 {¶ 19} Melton's assertion with respect to the prosecutor's remarks during opening argument concern the prosecutor's legitimate interpretation of what the evidence would show. That is, Melton's behavior at the bus stop led to his initial arrest, and his later resistance to the officers' authority was demonstrated in a physical manner with a kick that injured Fankhauser's knee.
 {¶ 20} The prosecutor's questions of the witnesses, in like manner, simply and appropriately were designed to prove that Melton committed the offense, while challenging Melton's version of events. Thus, Fankhauser and Wilson arrested Melton for committing one offense, but their entire dealings that evening led to Melton's commission of another.
 {¶ 21} The prosecutor's questions of the witnesses did not violate Evid.R. 404(B), but instead established that when the officers sought to control Melton's disruptive behavior, Melton took the opportunity to kick Fankhauser in the left knee. This is the prosecutor's role, and he did not abuse it. *Page 7 
 {¶ 22} Since no prosecutorial misconduct occurred, no error occurred, plain or otherwise. Accordingly, Melton's fist assignment of error is overruled.
 {¶ 23} Melton asserts in his next three assignments of error that he deserves a new trial because his defense counsel provided ineffective assistance.
 {¶ 24} A claim of ineffective assistance of counsel requires proof that counsel's performance "has fallen below an objective standard of reasonable representation," and, in addition, that prejudice arose from that performance. State v. Bradley (1989), 42 Ohio St.3d 136, paragraph two of the syllabus. Counsel is strongly presumed to have rendered adequate assistance. State v. Smith (1985), 17 Ohio St.3d 98. Therefore, this court will not second-guess what can be considered a matter of trial strategy.
 {¶ 25} Each of the instances to which Melton points as demonstrating inadequate representation fall into the category of trial strategy. The record reflects defense counsel made objections to the prosecutor's comments and questions when an objection was appropriate. However, counsel reasonably refrained from objecting to either fair comments or relevant testimony, such as the circumstances that led to the incident.
 {¶ 26} Similarly, defense counsel reasonably refrained from requesting a jury instruction on self-defense, since it was unwarranted. The entire theory of the defense was that Melton had no intention of hurting Fankhauser. Rather, the *Page 8 
defense case was geared to suggest an accident occurred because the officers were acting in an aggressive manner toward Melton, who lost his balance as Fankhauser and Wilson pushed him into a chair.
 {¶ 27} This defense was nearly successful; the record reflects the jury had difficulty coming to a verdict of guilty. Under the circumstances, Melton cannot demonstrate trial counsel's performance fell below an objective standard of reasonable representation.
 {¶ 28} Consequently, his second, third, and fourth assignments of error also are overruled.
 {¶ 29} Melton's conviction, accordingly, is affirmed.
It is ordered that appellee recover from appellant costs herein taxed.
The court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this court directing the common pleas court to carry this judgment into execution. The defendant's conviction having been affirmed, any bail pending appeal is terminated. Case remanded to the trial court for execution of sentence
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
COLLEEN CONWAY COONEY, P.J. and *Page 9 
PATRICIA ANN BLACKMON, J., CONCUR
[1] Quotes indicate testimony provided at trial.
[2] R.C. 2913.04(A). *Page 1